Paul L. Stoller (No. 016773)
Jennifer Rethemeier (No. 031398)
Dalimonte Rueb Stoller, LLP
2425 East Camelback Road, Suite 500
Phoenix, Arizona 85016
Telephone: (602) 892-0341
paul@drlawllp.com
jennifer.rethemeier@drlawllp.com

Mark S. Reich (pro hac vice application forthcoming)
Courtney E. Maccarone  (pro hac vice application forthcoming)
Levi & Korsinsky, LLP
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
mreich@zlk.com
cmaccarone@zlk.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Cartwright and Cheyenne Emery Hart, on Behalf of Themselves and All Others Similarly Situated, | CASE NO. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | |
| U-Haul International, Inc. | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

Plaintiffs Christine Cartwright and Cheyenne Emery Hart (collectively the "Plaintiffs"), individually and on behalf of all others similarly situated, by and through

their undersigned counsel, bring this class action complaint against Defendant U-Haul International, Inc. ("U-Haul" or "Defendant"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of all persons who provided Personally Identifiable Information ("PII" or "Private Information") to U-Haul which was subsequently exposed in a data breach ("the Data Breach").[1]

2.      Intruders had access to the Plaintiffs' data for approximately five months, between November 5, 2021, and April 5, 2022.[2]

3.      U-Haul failed to properly secure and safeguard Plaintiffs' and Class's PII stored within Defendant's information network, including, without limitation, full names, drivers' license numbers, and dates of birth.[3]

4.      U-Haul was able to confirm that intruders gained access to Plaintiffs' and the Class's PII by September 7, 2022.[4]

---

[1] Lucas Manfredi, *U-Haul says customer names, driver's license numbers exposed in data breach,* Fox Business (September 13, 2022, 4:52 PM EDT), https://www.foxbusiness.com/lifestyle/u-haul-says-some-customer-names-drivers-license-numbers-exposed-data-breach.

[2] *Id.*

[3] *Id.*

[4] *Id.*

5.      On July 12, 2022, U-Haul discovered that its systems had been compromised and that some rental contract data had been accessed in the Data Breach.[5]

6.      On August 1, 2022, U-Haul's investigation found that "some customer contracts were accessed."[6]

7.      U-Haul eventually began notifying affected customers that their data, including names, drivers' license numbers, and dates of birth were compromised, with the earliest letters to customers dated September 9, 2021.[7]

8.      In other words, U-Haul did not notify Plaintiffs and the Class until 59 calendar days had passed since discovering the Data Breach.

9.      It is unclear as to if or when all affected customers were notified their data was accessed in the Data Breach.

10.     Plaintiff Hart's notice of the data breach was dated September 9, 2022.

11.     Nearly 2.2 million US residents were affected by U-Haul's Data Breach.[8]

12.     Defendant maintained the PII in a reckless manner.  In particular, the PII was maintained on Defendant's network system in a condition vulnerable to cyberattacks.

13.     Defendant exposed Plaintiffs and Class Members to harm by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to

---

[5] *Id.*

[6] *Id.*

[7] *Welfare & Pension Administration Service, Inc. Provides Notice of Data Event*, https://www.nbc4i.com/business/press-releases/cision/20220218CL67468/welfare-pension-administration-service-inc-provides-notice-of-data-event/ (last visited March 15, 2022).

[8] https://apps.web.maine.gov/online/aeviewer/ME/40/eb945aa1-bd3a-4c32-9792-4cb1c6376f10.shtml (noting 2,195,831 U.S. citizens affected as of the time of filing the notice)

ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust network systems and security practices in place to safeguard participants' PII; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiffs and Class Members prompt notice of the Data Breach.

14.     In addition, Plaintiffs' and Class Members' sensitive PII – which was entrusted to Defendant – was compromised and unlawfully accessed due to the data breach.

15.     Plaintiffs' and Class Members' identities are now at risk because of Defendant's negligent conduct since the PII that Defendant collected and maintained is now in the hands of hackers.

16.     With their information available to hackers, bad actors can commit a variety of crimes including, e.g., opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class members' names but with another person's photograph, and giving false information to police during an arrest.

17.     Consumers who trusted U-Haul to securely store their information have suffered injury and ascertainable losses in the form of the present and imminent threat of fraud and identity theft, out-of-pocket expenses and value of time reasonably incurred to remedy or mitigate the effects of the data breach, loss of value of their personal information, and loss of the benefit of their bargain.

18.    Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII that Defendant collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and other Class Members that their information had been subject to the unauthorized access of an unknown third party.

19.    Plaintiffs' claims are brought as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and all other similarly situated persons. Plaintiffs seek relief in this action individually and on behalf of others subjected to the Data Breach for negligence, breach of implied contract, violation of Florida's Deceptive and Unfair Trade Practices Act, and unjust enrichment.

## **PARTIES**

20.    Plaintiff Cartwright is a resident of Tennessee.  On or about August 18, 2021, Plaintiff Cartwright contracted to use U-Haul's services in Tennessee.  Plaintiff Cartwright reserved U-Haul's services online, but went in person to sign various forms, causing her to provide her information to U-Haul.  Plaintiff Cartwright discovered her Bank of America account password had been reset, and an application for a new account had been made in her name without her knowledge or authorization on August 27, 2022, which was subsequently approved the same day.  As a precaution learned from her work in the finance world, Plaintiff Cartwright normally changes her passwords every 60 days.  Plaintiff Cartwright suffered injury and was damaged as a result of U-Haul's failure to keep her PII secure.

21.     Plaintiff Hart is a resident of New Mexico.  In or about March 2022, Plaintiff Hart obtained her U-Haul services at Dogwood Storage in Milton, Florida, causing her to provide her information to U-Haul.  Plaintiff Hart received a notice of the Data Breach from U-Haul in mid-September.  Plaintiff Hart suffered injury and was damaged as a result of U-Haul's failure to keep her PII secure.

22.     Defendant U-Haul is a moving and storage operator incorporated in the state of Nevada, with its principal place of business in Phoenix, Arizona. U-Haul is a subsidiary of AMERCO.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from at least one Defendant.

24.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in the state of Arizona, regularly conducts business in this District, and has extensive contacts with this forum.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District, and Defendant transacts substantial business in this District.

## COMMON FACTUAL ALLEGATIONS

**A.     U-Haul Did Not Employ Reasonable Methods of Safeguarding Plaintiffs' and the Class's PII**

26.     U-Haul was founded in 1945 as a do-it-yourself moving company.[9]  U-Haul currently has 21,000 locations across the United States and Canada, offering a full complement of rentable trucks, trailers, towing devices and storage space.[10]

27.     U-Haul obtains consumers', including Plaintiffs' and Class Members', PII to provide its services.[11]

28.     As a part of this exchange, U-Haul's Privacy Policy promises to "use commercially reasonably physical, managerial, and technical safeguards to preserve the integrity and security of [consumers'] information and our systems."[12]

29.     Further, U-Haul promises that, "[i]n the event that personal information is compromised as a result of a breach of security, We will promptly notify those persons whose personal information has been compromised, in accordance with the notification procedures set forth in this Privacy Policy, or as otherwise required by applicable law."[13]

30.     However, U-Haul employed unreasonably lax security in defending access to its internal systems.

31.     The Data Breach occurred as a result of two unique passwords to access the internal systems becoming compromised.

---

[9] https://www.uhaul.com/About/History /

[10] https://www.amerco.com/history.aspx

[11] https://www.uhaul.com/Legal/PrivacyPolicy/#HowWeUseInformation

[12] https://www.uhaul.com/Legal/PrivacyPolicy/#Security

[13] https://www.uhaul.com/Legal/PrivacyPolicy/#Security

32.     With only the passwords, the hackers gained access to U-Haul's systems, which implies that multi-factor authorization, an industry standard for security protocols, were not employed by U-Haul in securing its systems.[14]

33.     To make matters worse, U-Haul took an unreasonable eight months just to discover the Data Breach, never mind notifying impacted customers.[15]

34.     By obtaining, collecting, using and deriving a benefit from Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII from unauthorized disclosure.

35.     Plaintiffs and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.

36.     Plaintiffs and the Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

**B.    U-Haul Was Aware Of Its Inadequate Network Security**

37.     Hidden between claims that U-Haul will utilize reasonable practices and tools to maintain its data security, U-Haul admits that it is generally incapable of

---

[14] *See* Alicia Hope, *U-Haul Data Breach Exposed Sensitive Customer Data of More than 2 Million Clients Over 5 Months,* CPO Magazine (September 21, 2022), https://www.cpomagazine.com/cyber-security/u-haul-data-breach-exposed-sensitive-customer-data-of-more-than-2-million-clients-over-5-months/ (noting that access to sensitive information should "never be protected solely with passwords, regardless of password complexity" and highlighting the "importance of multifactor authentication in protecting customer data").

[15] Lucas Manfredi, *U-Haul says customer names, driver's license numbers exposed in data breach,* Fox Business (September 13, 2022 4:52 PM EDT), https://www.foxbusiness.com/lifestyle/u-haul-says-some-customer-names-drivers-license-numbers-exposed-data-breach.

guaranteeing the safety of information it collects for customers.[16]

38.     U-Haul does note that, should a data breach take place, it will "promptly notify those persons whose personal information has been compromised," in accordance with its own notification policies or as otherwise required by applicable law.[17]

**C.     U-Haul's Electronic Record Security Was Breached**

39.     Despite U-Haul's promise to employ commercially reasonable methods of safeguarding consumer data, unauthorized parties gained unfettered access to consumer data for nearly half a year as a result of U-Haul-owned passwords being compromised and used to access an internal tool for searching through customer contracts. [18]

40.     Between November 5, 2021, and April 5, 2022, unauthorized parties gained access to U-Haul's "customer contract search tool" which "allows access to rental contracts for U-Haul customers."

41.     On July 12, 2022, U-Haul identified two unique passwords that were compromised by an unauthorized party, which used the passwords to access the customer contract search tool.[19]

---

[16] https://www.uhaul.com/Legal/PrivacyPolicy/#Security

[17] *Id.*

[18] Sergiu Gatlan, *U-Haul discloses data breach exposing customer driver licenses*, BleepingComputer.com (September 12, 2022 4:28 PM), https://www.bleepingcomputer.com/news/security/u-haul-discloses-data-breach-exposing-customer-driver-licenses /; https://www.documentcloud.org/documents/22286634-u-haul-consumer-notification-letter-bc-555.

[19] Lucas Manfredi, *U-Haul says customer names, driver's license numbers exposed in data breach,* Fox Business (September 13, 2022 4:52 PM EDT), https://www.foxbusiness.com/lifestyle/u-haul-says-some-customer-names-drivers-license-numbers-exposed-data-breach.

42.     In other words, U-Haul did not discover the Data Breach until eight months after the start of the Data Breach and two months after its conclusion. [20]

43.     On August 1, 2022, U-Haul determined that "some rental contracts were accessed."

44.     By September 7, 2022, U-Haul determined the identity of affected individuals.[21]

45.     On September 9, 2022, U-Haul began notifying governments and affected customers of the data breach, 59 calendar days after discovering the Data Breach.[22]

46.     While it is unclear if all affected consumers have been identified and notified, Plaintiff Hart received her notice, dated September 9, 2022, from U-Haul in mid-September.

**D.      U-HAUL's Response Increased the Potential of Harm**

47.     As a result of U-Haul's inability to secure Plaintiffs' and Class's Private Information, Plaintiffs and Class Members incurred unexpected and unnecessary burdens and expenses through trying to secure bank and financial accounts, monitor credit services, verify the security of accounts using the Private Information, and all other activities necessary to mitigate the harm of sensitive information being exposed.

---

[20] Lucas Manfredi, *U-Haul says customer names, driver's license numbers exposed in data breach,* Fox Business (September 13, 2022 4:52 PM EDT), https://www.foxbusiness.com/lifestyle/u-haul-says-some-customer-names-drivers-license-numbers-exposed-data-breach.

[21] *Id.*

[22] *Id.*

48.     Enhancing the danger to Plaintiffs and the Class, U-Haul was incapable of detecting the Data Breach for over eight months.

49.     From the time U-Haul determined that the Data Breach had taken place, U-Haul was unable to identify that Plaintiffs' and Class Members' information had been compromised for nearly two months.

50.     Rather than notifying affected customers as they were identified, U-Haul appears to have waited until the list of affected individuals was complete before starting the process of sending out notices to individual customers as well as government entities.

51.     U-Haul's own efforts to ameliorate the damage it caused by failing to secure Plaintiffs' and Class's Private Information culminated in the inadequate offer of credit monitoring services for one year.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Nationwide Class:

> All persons who were customers of U-Haul, in the United States, whose Private Information was compromised as a result of the Data Breach (the "Nationwide Class").

53.     In addition, Plaintiff Hart brings a class action pursuant to Florida's Class Action Mechanism (Fla. R. Civ. P. 1.220) for the following Subclass defined as:

> All persons who were customers of U-Haul, who obtained U-Haul's services in Florida whose Private Information was compromised as a result of the Data Breach (the "Florida Subclass").

54.     Specifically excluded from the Class are U-Haul, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers or entities controlled by U-Haul, and their heirs, successors, assigns, or other persons or entities related to or affiliated with U-Haul and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

55.     Plaintiffs reserves the right to amend the Class definition above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

56.     This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

57.     Numerosity (Rule 23(a)(1)): The Class is so numerous that joinder of all Class members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiffs estimates that the Class is comprised of thousands of Class members. The Class is sufficiently numerous to warrant certification.

58.     Typicality of Claims (Rule 23(a)(3)): Plaintiff, like the other customers of U-Haul, has been subjected to U-Haul inadequate handling of their Private information. Plaintiffs is a member of the Class and his claims are typical of the claims of the members of the Class.  The harm suffered by Plaintiffs is similar to that suffered by all other Class members that was caused by the same misconduct by U-Haul.

59.     Adequacy of Representation (Rule 23(a)(4)): Plaintiffs will fairly and adequately represent and protect the interests of the Class.    Plaintiffs has no interests antagonistic to, nor in conflict with, the Class. Plaintiffs has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

60.     Superiority (Rule 23(b)(3)): A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the monetary damages suffered by individual Class members is relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein.  If Class treatment of these claims is not available, U-Haul will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

61.     Predominant Common Questions (Rule 23(a)(2)): The claims of all Class members present common questions of law or fact, which predominate over any questions affecting only individual Class members, including:

> a.  Whether U-Haul's storage of Class Member's PII was done in a negligent manner;
>
> b.  Whether U-Haul breached its implied warranties;
>
> c.  Whether U-Haul breached its express warranties;
>
> d.  Whether U-Haul has been unjustly enriched;
>
> e.  Whether U-Haul took sufficient steps to secure Private Information;

13

f.   The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

62.   Information concerning U-Haul's policies is available from U-Haul's records.

63.   Plaintiffs knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

64.   The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for U-Haul.  Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

65.   U-Haul has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

66.   Given that U-Haul has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

## COUNT I

**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiffs and All Class Members)**

67.   Plaintiffs hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

68.    In connection with receiving services from Flagstar, Plaintiffs and all other Class members entered into implied contracts with Defendant.

69.    Pursuant to these implied contracts, Plaintiffs and Class members provided Flagstar with their PII in order for Flagstar to provide its services, for which Flagstar is compensated. In exchange, Flagstar agreed to, among other things, and Plaintiff understood that Flagstar would: (1) provide services to Plaintiffs and Class members; (2) take reasonable measures to protect the security and confidentiality of Plaintiffs' and Class members' PII; and (3) protect Plaintiffs' and Class members' PII in compliance with federal and state laws and regulations and industry standards.

70.    In the ordinary course of providing its services, customers provide Defendant with PII, including drivers' license numbers.

71.    Implied in these exchanges was a promise by Defendant to take reasonable steps to ensure that the PII of Plaintiffs and Class members in its possession was secure .

72.    Implied in these exchanges was a promise by Defendant to ensure the PII of Plaintiff sand Class members in its possession was only used to provide the agreed-upon services, and that Defendant would take adequate measures to protect Plaintiffs' and Class members' PII.

73.    A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff's and Class members' PII to be accessed in the Data Breach.

74.    Indeed, implicit in the agreement between Defendant and its customers was the obligation that both parties would maintain information confidentially and securely.

75.    These exchanges constituted an agreement and meeting of the minds between the parties: Plaintiffs and Class members would provide their PII in exchange for services by Defendant. These agreements were made by Plaintiffs and Class members as customers of Defendant's.

76.    It is clear by these exchanges that the parties intended to enter into an agreement and mutual assent occurred. Plaintiffs and Class members would not have disclosed their PII to Defendant but for the prospect of utilizing Defendant's services. Conversely, Defendant presumably would not have taken Plaintiffs' and Class members' PII if it did not intend to provide Plaintiffs and Class members with its services.

77.    Defendant was therefore required to reasonably safeguard and protect the PII/PHI of Plaintiffs and Class members from unauthorized disclosure and/or use.

78.    Plaintiffs and Class members accepted Defendant's offer of services and fully performed their obligations under the implied contract with Defendant by providing their PII, directly or indirectly, to Defendant, among other obligations.

79.    Plaintiffs and Class members would not have entrusted their PII to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their PII.

80.    Defendant breached the implied contracts with Plaintiffs and Class members by failing to reasonably safeguard and protect Plaintiff's and Class members' PII.

81.    Defendant's failure to implement adequate measures to protect the PII of Plaintiffs and Class members violated the purpose of the agreement between the parties.

82.    Instead of spending adequate financial resources to safeguard Plaintiffs' and Class members' PII, which Plaintiffs and Class members were required to provide to Defendant, Defendant instead used that money for other purposes, thereby breaching its implied contracts it had with Plaintiffs and Class members.

83.    As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiffs and Class members, Plaintiffs and the Class members suffered damages as described in detail above.

## COUNT II

### NEGLIGENCE
### (On behalf of Plaintiffs and All Class Members)

84.    Plaintiffs hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

85.    Plaintiffs brings this count individually and on behalf of the Class Members.

86.    Defendant knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

87.    Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII.

88.    Defendant had, and continues to have, a duty to timely disclose that Plaintiffs' and Class Members' PII within its possession was compromised and precisely the type(s) of information that were compromised.

89.    Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, New Mexico's Data Breach Notification Act and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

90.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

91.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

92.    Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII.

93.    The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

       a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

       b.  Failing to adequately monitor the security of its networks and systems;

       c.  Failure to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards;

d.  Failure to implement adequate response procedures after discovery of a data breach, including providing timely notice to Class Members.

94.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within Defendant's possession.

95.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII.

96.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

97.    It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiffs and Class Members' PII would result in injury to Plaintiffs and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

98.    It was foreseeable that the failure to adequately safeguard Plaintiffs' and Class Members' PII would result in injuries to Plaintiffs and Class Members.

99.    Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised.

100.    But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

101.    As a result of Defendant's failure to timely notify Plaintiffs and Class Members that their PII had been compromised, Plaintiffs and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

102.    As a result of Defendant's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiffs and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services that were received without adequate data security.

## COUNT III

### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
#### (Fla. Stat. Ann. §501.201, *et seq.*)
#### (On behalf of Plaintiff Hart and the Florida Subclass)

103.    Florida Class Representative Cheyenne Emery Hart incorporates the preceding allegations as though fully set forth herein.

104.    This cause of action is brought on behalf of the Florida Subclass against U-Haul.

105.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or

deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. §501.204(1).

106.    In construing the provisions of the FDUTPA, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. Ann. §501.204(2).

107.    Plaintiffs and the Class members are "[c]onsumer[s]" and "[i]nterested part[ies] or person[s]" as defined by the FDUTPA. See Fla. Stat. Ann. §501.203(6)-(7).

108.    Defendant engaged in "[t]rade or commerce" as defined by the FDUTPA. See Fla. Stat. Ann. §501.203(8).

109.    Defendant, directly or through its agents, employees, and/or subsidiaries, violated the FDUTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts as to the steps it takes to secure customer data and the procedures it takes in responding to a data breach, including that: basic industry standard security techniques like multi-factor authorization were not implemented, data breach detection protocols and tools were insufficient to deal with the large threat of data breaches, and procedures to identify and notify customers affected by the Data Breach were inadequate to promptly alert its customers of such a data breach.

110.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its data security, as detailed above, Defendant engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the FDUTPA.

111.    Defendant's misrepresentations and omissions – regarding the inherently defective and unreasonably dangerous nature of data handling – were disseminated to Plaintiffs and the Class members in a uniform manner.

112.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about the security of their data in Defendant's possession.

113.    The facts regarding Defendant's data security that Defendant knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their decisions to disclose PII to the Defendant in exchange for Defendant's services.

114.    Plaintiffs and the Class members were aggrieved by Defendant's violations of the FDUTPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts as set forth above.

115.    Specifically, Plaintiffs and the Class members were deceived by Defendant's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Defendant's data security. Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiffs and the Class members would not have purchased Defendant's services, and, thus, they did not receive the benefit of the bargain and will

suffer out-of-pocket loss in time and money by taking steps to secure their data after the Data Breach.

116.    Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

117.    As a result of Defendant's violations of the FDUTPA, as alleged herein, Plaintiffs and the Class members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the FDUTPA.

## COUNT IV

### UNJUST ENRICHMENT
### (On behalf of Plaintiffs and All Class Members)

118.    Plaintiffs incorporate the above allegations as if fully set forth herein.

119.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

120.    Plaintiffs conferred a benefit upon Defendant by paying for Defendant's administration services.

121.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs. Defendant also benefited from the receipt of Plaintiffs' PII, as this was used for Defendant to track and administer services to Plaintiffs and the Class.

122.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' services and their PII because Defendant failed to adequately protect their PII. Plaintiffs and the proposed Class would not have

provided their PII or paid Defendant's asking price for its services had they known Defendant would not adequately protect their PII.

123.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiffs as the representative of the Class and his counsel as Class Counsel;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)    For damages in amounts to be determined by the Court and/or jury

(e)    An award of statutory damages or penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    Such other and further relief as the Court deems necessary and appropriate.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

Dated: October 5, 2022.              Respectfully submitted,

*/s/  Jennifer Rethemeier*
Paul L. Stoller (No. 016773)
Jennifer Rethemeier (No. 031398)
**DALIMONTE RUEB STOLLER, LLP**
2425 E. Camelback Road, Suite 500
Phoenix, Arizona 85016
Tel: (602) 892-0341
Fax: (855) 203-2035
jennifer.rethemeier@drlawllp.com
paul@drlawllp.com

And, *to be admitted Pro Hac Vice:*

Mark S. Reich
Courtney E. Maccarone
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
mreich@zlk.com
cmaccarone@zlk.com

*Counsel for Plaintiffs*